## BENJAMIN PORTER v. A. LEDOUX & CO.

The omission of a party to reply to a letter will not be considered as sufficient evidence of an admission contradicting or varying a written agreement.

APPEAL from the Fourth District Court of New Orleans, *Strawbridge*, J. *Rozier* and *Hays*, for plaintiff, contended, upon the question of evidence decided by the Supreme Court: As to the letter of the defendants, of course they cannot make evidence for themselves. We are completely strangers to the matters therein set forth. The defendants could only establish these matters by proper evidence. The letter was introduced merely to show the fact that such a letter was written, and received by plaintiff, after the plaintiff had attempted to get possession of the leased premises. It could not be used for any other purpose.

*Elmore* and *King*, upon the same point, contended: The judge of the district court decided this case upon the evidence, in favor of the defendants. Unless clearly erroneous, his judgment ought not to be disturbed. The plaintiff's action is for damages for the violation of a contract of lease on the part of defendants. The answer of defendants states clearly the grounds of defence on the merits.

It was understood between the parties, that if the agent of the defendants had leased the plantation before the plaintiff arrived at the place, the contract was to be annulled. This is proved by the letter of the defendants, dated April 2d, 1847, to the plaintiff. The testimony of *Filhiol* proves the letter was delivered. The defendants having made the necessary affidavit, the plaintiff was bound to produce the letter, or account for its non-production, under penalty of having taken as confessed the allegations contained in the affidavit. C. P. 140. The plaintiff having received the letter, and never having replied to it in any manner, was a tacit admission of the truth of its contents. A party who remains silent when he should speak, will not be allowed afterwards to open his mouth. *Meux* v. *Mortin*, 5th Ann. 107. *Freeman* v. *Savage*, 2d Ann. 269. *Pitts* v. *Shubert*, 11 L. R. 288. Story on Agency, p. 247 to 255. *Flower* v. *Jones* 7 N. S. 144. 2 Starkie on evidence, 16, 20.

The judgment of the court was pronounced by

SLIDELL, J. On the 19th of March, 1847, the defendants, by a written contract, leased to the plaintiff, a resident of Monroe in the parish of Ouachita, certain premises, which are described in the lease as "the buildings which are on our plantation on the Ouachita river, known as the Bry plantation, together with sixty acres of the front land," for the sum of $120, payable on the 1st of January, 1848. It was stipulated in the lease, that if the lessee should use more land than the sixty acres, he should pay for the same at the rate of two

48

dollars per acre. The lessee covenanted to keep the buildings in good repair. There was also a clause that "if *Ledoux & Co.* should rent the balance of the lands belonging to the said plantation, the said *Porter* obligates himself to cede the use of the cotton gin, after he has done ginning his own cotton, to the person who shall have taken the said lands, to gin his own cotton, should he require it." The lease contained no other covenants or conditions, and was signed in duplicate by the parties. In the month of March the plaintiff embarked at New Orleans in a steamboat for Ouachita, taking with him various agricultural implements, furniture, plantation supplies, and some slaves, and disembarked at the Bry plantation towards the close of March. Upon going upon the estate, he found another person in possession of the premises, under a lease obtained from *Filhiol* and *King*, the agents of *Ledoux & Co.* in Ouachita, a day or two previous. He demanded possession from the occupant, but was refused. He had a conversation soon after with *Filhiol*, in which he complained of the disappointment. Subsequently to this, it would seem, but at what precise date in the month of March does not appear, *Filhiol* transmitted to him a letter from *Ledoux & Co.*, the contents of which *Filhiol* was unacquainted with. The plaintiff, after incurring some inconvenience and expense, established himself on other lands in Ouachita, and in the following year brought suit against *Ledoux & Co.* for damages for the breach of the contract. The defendants admitted in their answer the execution of the lease, but averred that in the negotiations which preceded it, and which were conducted by *Ledoux*, one of the firm, it was stated to the plaintiff that they had an agent near the plantation, who might perhaps have rented it, and it was agreed that if it was already rented the contract with the plaintiff was to be of no effect. That besides the lease, which was signed, there was another instrument prepared, embodying such a proviso, and that when *Miltenberger*, the other partner, signed the lease for the firm out of *Ledoux's* presence, he being ignorant of the conditional arrangement, omitted to have the other paper signed.

The district judge considered the fact as sufficiently proved, that the letter of *Ledoux & Co.* reached the plaintiff, and we concur in that conclusion. It may also be inferred from the evidence, that he received it a few days after his unsuccessful attempt to get possession under the lease.

The letter was as follows: "Dr. Porter, Monroe, Ouachita. Dear Sir, We leased you our Bry plantation with the condition, as you will recollect, that it was not already leased by *Mr. Grammont Filhiol*, whom we had requested to rent the said property for us. We had prepared the lease for you to sign, as also a writing providing for the above conditions; when you came to the counting-house, our *Mr. Ledoux*, who had made the agreement with you, was absent, and the lease was handed to you, but not the proviso. We hear that the property had been rented previously by *Mr. Filhiol*. We are sorry to say that the contract we had made with you becomes null and void. Your's respectfully, A. LEDOUX & Co.

There is no evidence that the plaintiff ever answered this letter. His silence was considered by the district judge as proving that the declaration contained in the letter was true; and on this ground judgment was rendered for the defendants. The parties had signed a written agreement which contains no such condition as is asserted in the letter; and certainly the evidence, which, by interpolating an important condition, is so materially to qualify a written contract, absolute in its terms, ought to be very cogent and conclusive. The maxim *qui tacet consentire videtur*, is one which, in questions of evidence, ought to be

applied with careful discrimination and with caution. See Greenleaf on Evidence, § 197, *et seq.*

It is true, that when parties who have had dealings together meet face to face, and one asserts a claim, the natural impulse in the mind of the other would be to deny it, if he believed it unfounded. In most cases, the denial would be distinct and immediate; and so a reasonable inference of its truth might be drawn from the party's silence. But even where the declaration is so made, and the person addressed has the opportunity of replying at once and on the spot, it would be dangerous to permit parol proof of his silence, when a right in derogation of a written contract is verbally asserted to destroy or qualify his apparent rights under such contract. If caution be necessary in inferring acquiescence from silence, in the case of declarations made by one interested party to another, face to face, it is still more so where the declaration is made by letter.

There is a class of cases where it is a man's clear duty to reply,—as where the matter is *in re agenda,* or where the previous relations of the parties have been such that the interest of the person writing may suffer detriment, or his future conduct be influenced by the other's silence. But where, as in this case, the plaintiff had a written contract, which had been defeated by the act of the defendants, when they in their letter declared the matter closed and the agreement null, and did not even ask a reply, it seems to us to be going too far to say that the plaintiff, by not answering this letter, is to be considered as admitting the truth of their declarations, and that his lease, absolute on its face, was intended to be conditional.

Judgment reversed, and cause remanded for a new trial; defendants paying costs of appeal.